USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/13/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LYNNE BRUNDAGE and MICHAEL BRUNDAGE,

    Plaintiffs,

-against-

PENSION ASSOCIATES RETIREMENT PLANNING, LLC and MORGAN STANLEY & CO., LLC,

    Defendants.

No. 18-cv-2473 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiffs Lynne Brundage and Michael Brundage bring this action against Defendants Pension Associates Retirement Planning, LLC ("Pension Associates") and Morgan Stanley & Co., LLC ("Morgan Stanley") pursuant to the Employment Retirement Income Act ("ERISA"), 29 U.S.C. §§ 1024(b)(4), 1132(c), New York General Business Law § 349, and New York common law. (Compl., ECF No. 1.) Defendant Pension Associates filed a motion to dismiss (ECF Nos. 15 & 20) and Defendant Morgan Stanley filed a motion to compel arbitration and stay this matter or, in the alternative, to dismiss. (ECF No. 21.) For the reasons stated below, Defendant Morgan Stanley's motion to compel arbitration and stay this matter is GRANTED, and Defendant Pension Associates's motion to dismiss is DENIED.

## BACKGROUND

    Unless otherwise noted, the facts are drawn from Plaintiffs' Complaint or from documents attached to the Complaint or incorporated by reference and are accepted as true for the purposes of Defendants' motions.

    Plaintiff Lynne Brundage was previously a partner at the now-defunct T.G. Elliott Associates, Inc. ("T.G. Elliott"), a New York corporation. (Compl. ¶ 4.) In January 2000, T.G. Elliott entered into an agreement with Defendant Pension Associates to establish and administer a pension plan for plan participants Lynne and Michael Brundage and Lisa Elliott ("Plan"). (*Id.*

1

¶¶ 6 – 7 & 10.) Defendant Pension Associates was designated as the Plan Sponsor. (*Id.* ¶ 17.) Defendant Morgan Stanley, at all relevant times, held the Plan's funds in a dedicated account and was responsible for allocating the Plan's earnings based on an agreed-upon percentage allocation, forty percent to Ms. Elliott and sixty percent to Plaintiffs. (*Id.* ¶¶ 8 – 9 & 11 – 12.)

The Plan was amended in 2001, 2003, 2011, and 2012. (*Id.* ¶¶ 12 – 15.) During discovery for litigation in New York state court,[1] which did not involve either Defendant, Plaintiffs learned that since approximately 2000, the allocation of assets from the Plan fluctuated on an annual basis despite the agreement, resulting in an under-allocation to Plaintiffs. (*Id.* ¶¶ 20, 22 & 24.) Plaintiffs also discovered that Ms. Elliott had taken multiple loans from her accrued benefit, which meant that she had been permitted to exceed the maximum loan amount allowed under the Plan and to take short-term withdrawals in violation of the Plan. (*Id.* ¶¶ 29 – 33.) Defendant Pension Associates did not provide any statements about the repayments or the allocation of those repayments. (*Id.* ¶ 34.)

Based on these recently-discovered discrepancies, Plaintiff Lynne Brundage repeatedly requested documents from Defendants, including, among other documents, plan statements, transaction records, allocation of loan repayments, and statements from an annuity in which the fund had invested; Defendant Pension Associates repeatedly refused to provide the requested documents. (*Id.* ¶¶ 35 – 36, 45 & 50.) In October 2015, Plaintiff Lynne Brundage instructed Defendant Morgan Stanley not to complete any further transactions for the Plan without approval of both owners of T.G. Elliott and then, in April 2016, told both Defendants to permit no further changes to the Plan. (*Id.* ¶¶ 37 – 38.) That same month, Defendant Morgan Stanley disbursed $ 457,128.64 to Ms. Elliott from the Plan's account. (*Id.* ¶ 39.) At some point, Plaintiff Lynne

---

[1] This litigation settled on December 28, 2016 before any allegations were resolved on their merits. (Compl. ¶ 53.)

Brundage asked Defendant Morgan Stanley for statements and accounting for the Plan dating back to October 2015. (*Id.* ¶ 42.) Defendant Morgan Stanley did not produce those documents to Plaintiffs and told Plaintiff Lynne Brundage that it had actually provided them to Defendant Pension Associates. (*Id.* ¶ 44.) In June 2016 and July 2016, Defendant Pension Associates attempted to bill Plaintiffs for the time it took to provide them with documents they were entitled to receive as Plan participants. (*Id.* ¶¶ 41 & 43.)

On July 16, 2016, the Plan was dissolved, and Plaintiffs received a disbursement of the balance of their funds in October 2016. (*Id.* ¶¶ 46 & 51.) Both Defendants failed to provide Plaintiffs with a closing statement following the dissolution of the Plan. (*Id.* ¶ 47.)

Defendant Morgan Stanley requests that the Court grant its motion to compel arbitration and stay the action pending the results of the arbitration. In the alternative, it argues that pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) the Court should dismiss Plaintiffs' claims against it because it was not a plan administrator under ERISA and because Plaintiffs did not plausibly allege that it breached a fiduciary duty. Defendant Pension Associates argues that Plaintiffs claims against it should be dismissed under Rule 12(b)(6) because T.G. Elliott, not Pension Associates, was the Plan administrator and therefore Pension Associates cannot be liable under ERISA. Defendant Pension Associates also asserts that even if ERISA applied, none of the documents Plaintiffs requested were covered under the statute. Finally, according to Pension Associates, Plaintiffs' state law claims are preempted by ERISA.

## STANDARDS OF REVIEW

### I. Motion to compel arbitration

When deciding whether to compel arbitration, courts consider whether (1) the parties agreed to arbitrate and (2) the arbitration agreement includes the disputed claim or claims.

*Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015). According to the Supreme Court, the Federal Arbitration Act ("FAA")[2] "embodies [a] national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Due to the "strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (quoting *Associated Brick Mason Contractors of N.Y., Inc. v. Harrington*, 820 F.2d 31, 35 (2d Cir.1987)) (citation omitted).

Courts are required to analyze a motion to compel arbitration under a standard similar to that applied to motions for summary judgment; if there is a genuine issue of fact surrounding the purported agreement to arbitrate, the court cannot compel arbitration. *Kutluca v. PQ N.Y. Inc.*, 266 F. Supp. 3d 691, 700 (S.D.N.Y. 2017) (citing *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). "A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010).

## II. Motion to dismiss

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "While legal conclusions can

---

[2] Parties do not dispute that the FAA applies. (Pls.' Opp'n p. 12); (Def. Morgan Stanley & Co. LLC's Mem. of Law in Supp. of Mot. to Compel Arbitration and Stay Action or, in the Alternative, to Dismiss the Compl. p. 7, ECF No. 23.)

provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is " 'not bound to accept as true a legal conclusion couched as a factual allegation,' " or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 662. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

"Where, as here, a plaintiff proceeds *pro se*, the court must 'construe [ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s].' " *Askew v. Lindsey*, No. 15-CV-7496 (KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (citing *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). Yet, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Id*. (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)) (internal quotation marks omitted).

## DISCUSSION

For the reasons articulated below, the Court determines that Plaintiffs entered into a valid arbitration agreement with Defendant Morgan Stanley, that the agreement applies to Plaintiffs' claims against that Defendant, and that this matter should be stayed pending the outcome of

5

arbitration.

Defendant Morgan Stanley argues that Plaintiffs should be required to arbitrate their claims because (1) they signed the Client Agreement with Defendant Morgan Stanley which included an arbitration clause or, alternatively, because (2) they sought to benefit from the Retirement Plan Manager ("RPM") agreement, signed by Lisa Elliott on behalf of the Plan in 2011, which included an arbitration clause.

After the Plan was terminated in 2016, Plaintiffs transferred the funds designated to them to an Individual Retirement Account ("IRA") that they opened with Defendant Morgan Stanley, and, in doing so, they agreed to the terms of a Client Agreement. (Kauff Decl., Ex. B. ("Client Agreement") pp. 15 – 16, ECF No. 22.) The Client Agreement included a bolded arbitration clause:

> All parties to this Agreement are giving up the right to sue each other in court . . . . You agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between you and MSSB and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by you with MSSB individually or jointly with others in any capacity; (ii) any transaction involving MSSB or any predecessor or successor firms by merger, acquisition or other business combination and you, whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between you and us, any duty arising from the business of MSSB or otherwise, shall be determined by arbitration before, and only before, any self-regulatory organization or exchange of which MSSB is a member.

(*Id.* pp. 9 – 10.) A bolded reminder of the arbitration clause appears on the signature page: "The attached Client Agreement . . . includes a predispute arbitration clause in Section 15, beginning on page 9." (*Id.* p. 15.)

The question of whether the arbitration agreement included the disputed claims is easily answered. The arbitration clause in the Client Agreement encompasses "all claims or controversies," including those arising prior to the Client Agreement, between Plaintiffs and

6

Defendant Morgan Stanley relating to any account or transaction between those parties. Here, Plaintiffs' claims against Defendant Morgan Stanley arise from transactions between Plaintiffs and Defendant Morgan Stanley. (Compl. ¶¶ 58 – 71) Those claims are plainly covered by the arbitration clause. Therefore, the only remaining question for the Court to consider in determining whether to compel arbitration under the Client Agreement is whether Plaintiffs and Defendant Morgan Stanley agreed to arbitrate.

While Plaintiffs admit that they signed the Client Agreement, they were not provided with the portion of the Client Agreement containing the arbitration clause. For this reason, and because Plaintiffs believed that they had no choice but to execute the agreement or continue incurring fees and penalties, Plaintiffs argue that the Client Agreement was unconscionable. (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Compel Arbitration and Stay Action or, in the Alternative, to Dismiss the Compl. ("Pls.' Opp'n") p. 13, ECF No. 25); (Brundage Decl. p 10, ECF No. 26.) Unconscionability implicates the first prong of an analysis for a motion to compel arbitration: whether the parties to an agreement actually agreed to arbitrate.

Under New York law, which applies here, an arbitration clause is unconscionable if it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible [sic] according to its literal terms." *Nayal v. HIP Network Serv. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (quoting *Gillman v. Chase Manhattan Bank, N.A.,* 534 N.E.2d 824, 828 (N.Y. 1988)) (internal quotation mark omitted). Generally, a plaintiff must show that an agreement is both procedurally and substantively unconscionable. *Nayal*, 620 F. Supp. 2d at 573; *see Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010) (noting that a finding of unconscionability usually requires that both the procedural and substantive components are present and that only in exceptional

7

circumstances will a contract be unenforceable based solely on substantive unconscionability).

A contract is procedurally unconscionable if the circumstances surrounding the formation of the contract show that the party alleging unconscionability lacked meaningful choice. *Nayal*, 620 F. Supp. at 571. A contract is substantively unconscionable if the terms unreasonably favor the opposing party. *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir.1999). Courts should consider all facts and circumstances in determining whether a contract is unconscionable. *In re Estate of Friedman*, 407 N.Y.S.2d 999, 1008 (2d Dep't 1978). However, "[a]bsent substantive unconscionability or fraud . . . , parties are charged with knowing and understanding the contents of documents they knowingly sign." *Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 63 (2d Cir. 2012).

## I. Procedural unconscionability

The arbitration clause in the Client Agreement is not procedurally unconscionable. Plaintiffs allege that they did not receive the portion of the Client Agreement containing the arbitration clause, but they do not dispute that they signed the Client Agreement. (Pls.' Opp'n p. 13); (Client Agreement pp. 16 – 17.) On both of the signature pages of that agreement, in bold and about half a page above the signature lines, are clear references to the arbitration agreement and citations to where to find it in the Client Agreement. (Client Agreement p. 15.) While Defendant Morgan Stanley should have provided Plaintiffs with a complete version of the Client Agreement, it was Plaintiffs' responsibility to review the portions of the agreement provided. "[I]t is settled New York law that 'a party will not be excused from his failure to read and understand the contents' of a document." *Kutluca v. PQ N.Y. Inc.*, 266 F. Supp. 3d 691, 701 (S.D.N.Y. 2017) (quoting *Johnson v. Thruway Speedways, Inc.*, 407 N.Y.S.2d 81, 83 (N.Y. App. Div. 3d Dep't 1978)).

8

A contract is not unconscionable merely because the signatory did not receive the full contract if the portions of the contract provided clearly alerted the signatory to the existence of missing portions of the contract. *See United States v. Kephart*, 170 B.R. 787, 791 (Bankr. W.D.N.Y. 1994) ("The unconscionability standard is strict and narrowly applied."); *Marvel Entm't Grp., Inc. v. Young Astronaut Council*, No. 88-CV-5141(RLC), 1989 WL 129504, at *4 (S.D.N.Y. Oct. 27, 1989) (noting that there is a "high standard of proof required to show unconscionability"). Here, because there was a citation to the location of the arbitration clause in the Client Agreement, the signature pages notified Plaintiffs both that they had not received the full contract and that there was an arbitration clause. Moreover, the reminder of the arbitration clause was clear; it was in bold and set off from other text as part of a bulleted list. *See Carr v. Credit One Bank*, No. 15-cv-6663 (LAK), 2015 WL 9077314, at *3 (S.D.N.Y. Dec. 16, 2015). There is no indication that Plaintiffs were denied an opportunity to review the signature pages, requested to review the full Client Agreement or the portion with the arbitration clause, or were denied a meaningful choice. If Plaintiffs had reviewed the document they signed, they would have noticed that a portion of the contract was missing based on the citation provided in the reference to the arbitration clause.

Plaintiffs also claim that they felt they had no choice but to sign the Client Agreement because they believed that it was the only way to avoid incurring fees and penalties from the delay in rolling over the funds from the Plan. (Pls.' Opp'n p. 14); (Brundage Decl. ¶ 10.) This, however, does not render the arbitration clause procedurally unconscionable. The circumstances in *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377 (S.D.N.Y. 2002), which Plaintiffs cite for support that the Client Agreement was procedurally unconscionable, are distinct from those currently before the Court. In *Brennan*, the plaintiff had about fifteen minutes to sign a form

9

with an arbitration agreement provided by her employer. *Id.* at 384. Her employer "threatened the employees that those [who] would not sign the document would not be promoted," causing the plaintiff to believe that her employment would be adversely impacted if she refused to sign the agreement. *Id.* at 383. There was also a significant disparity in bargaining power; the plaintiff was an unrepresented single mother who was also pregnant with twins and lacked other financial support or access to health insurance beyond that provided through her job. *Id.* Accordingly, the court held that the plaintiff lacked a meaningful choice in deciding whether to sign the agreement. *Id.* Here, there is no indication that Plaintiffs were similarly pressured by Defendant Morgan Stanley. Although Plaintiffs argue that the fees being imposed on their allocation of the Plan's fund pressured them to sign the Client Agreement, this allegation is not enough to show that Plaintiffs did not have time for adequate review. There is also no indication that anything prevented Plaintiffs from moving their funds and opening up an IRA with another institution.

Additionally, there was also no significant imbalance in bargaining power between Parties. Unlike the plaintiff in *Brennan*, Plaintiff Lynne Brundage had been a partner in a business, owning fifty percent of T.G. Elliott. (Compl. ¶ 4.) Presumably, and no other facts or evidence suggest otherwise, she was familiar with the binding effect of contracts or was at least better equipped to review and understand a contract than the plaintiff in *Brennan*, who had no evident business experience. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) (holding that there was no indication that the plaintiff, "an experienced businessman, was coerced or defrauded into agreeing to the arbitration clause").

## II. Substantive unconscionability

Likewise, the arbitration agreement was not substantively unconscionable. In their opposition, Plaintiffs' only offer a conclusory statement to show that the agreement was substantively unconscionable: "[T]he agreement was substantively unconscionable because the terms of the agreement heavily favored Defendant by shielding them form [sic] involvement in the ongoing litigation." (Pls.' Opp'n p. 15.) This argument merely restates the standard for substantive unconscionability and is not enough to meet Plaintiffs' burden.

A review of the Client Agreement shows that there is no genuine dispute of material fact that the agreement is not substantively unconscionable. The applicability of an arbitration clause to actions predating the agreement is not enough to render that clause unconscionable under New York law. *See Williams v Dillon & Co.*, 243 A.D.2d 559, 560 (N.Y. App. Div. 2d Dep't 1997). Moreover, the clause in the Client Agreement applies equally to Plaintiffs and Defendant Morgan Stanley; it does not prohibit Plaintiffs from initiating arbitration or provide Defendant with special rights withheld from Plaintiffs. *See Molina v. Kaleo, Inc.*, 363 F. Supp. 3d 344, 351 (S.D.N.Y. 2019) (holding that an arbitration agreement was not substantively unconscionable even though the plaintiff argued that arbitration would be "cost prohibitive"); *Isaacs v. OCE Bus. Serv., Inc.*, 968 F. Supp. 2d 564, 570 (S.D.N.Y. 2013) (holding that because an arbitration agreement applied equally to each party, and because the party accused of unconscionability was required to pay any fees, it was not substantively unconscionable).

As Plaintiffs failed to show any genuine issue of material fact suggesting that the Client Agreement was procedurally and substantively unconscionable, the Court finds that there was a valid agreement between Parties to arbitrate. Plaintiffs argue that further discovery is needed to determine "whether the circumstances surrounding the agreement support invalidating the

agreement." (Pls.' Opp'n p. 15.) The Court disagrees. The evidence provided by Parties shows no genuine dispute of material fact that the Client Agreement was not procedurally unconscionable, as discussed *supra*. Even if additional discovery revealed other issues with the circumstances, the fact remains that the agreement is not substantively unconscionable. *Molina*, 363 F. Supp. 3d at 351 ("Even assuming, *arguendo,* that Plaintiff could demonstrate procedural unconscionability, there is nothing substantively unconscionable about the arbitration provisions."). It was Plaintiffs' burden to show unconscionability, and they failed to do so.

Accordingly, because Parties agreed to arbitration and because the arbitration agreement encompasses Plaintiffs' claims against Defendant Morgan Stanley, the Court must compel Plaintiffs to arbitrate their claims with Defendant Morgan Stanley. As the Court determines arbitration is necessary under the Client Agreement, it need not decide whether the arbitration clause in the RPM agreement applies to Plaintiffs.[3]

### III. Stay of litigation

To avoid confusion or prejudice to Plaintiffs, this matter is stayed in its entirety pending the results of the arbitration. The decision of whether to grant a stay is left to the discretion of the court. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983). Although Plaintiffs' claims against Defendant Pension Associates are not subject to an arbitration agreement, they arise from the same set of facts and are related to Plaintiffs' claims

---

[3] Lisa Elliott signed the RPM agreement on behalf of the Plan in 2011 which established Defendant Morgan Stanley's role in relation to the Plan. (Kauff Decl. Ex. A ("RPM agreement").) That agreement included an arbitration clause similar to that in the Client Agreement. (*Id.* p. 10.) Plaintiffs, as Plan participants together with Lisa Elliott, arguably knowingly benefited from the services Defendant Morgan Stanley provided to the Plan under this agreement. "Under the direct benefits theory of estoppel, a non-signatory may be compelled to arbitrate where the non-signatory 'knowingly exploits' the benefits of an agreement containing an arbitration clause, and receives benefits flowing directly from the agreement." *Bausch & Lomb Inc. v. Mimetogen Pharm., Inc*., No. 14-CV-6640(FPG), 2016 WL 2622013, at *7 (W.D.N.Y. May 5, 2016) (quoting n. *Belzberg v. Verus Inv. Holdings Inc.*, 21 N.Y.3d 626, 630 (2013)).

against Defendant Morgan Stanley. Plaintiffs claim that both Defendants violated ERISA by failing to provide requested documents related to the Plan and that both Defendants breached their fiduciary duties to Plaintiffs under the Plan and relating to Plan funds. *See Yee v. Roofing by Classic Restorations*, No. 09-CV-00311(DJS), 2010 WL 7864919, at *6 (D. Conn. June 8, 2010) (staying the entire litigation pending the outcome of arbitration between the plaintiff and one of the defendants because the plaintiff's claims against the arbitrating defendant arose from the same facts as those against the nonarbitrating defendants). "A stay as to claims against a non-arbitrating defendant is properly granted where the arbitration of the plaintiff's claims against a defendant party to the arbitration would at least partially determine the issues which form the basis of the claim against that non-arbitrating defendant." *Hikers Indus., Inc. v. William Stuart Indust. (Far East) Ltd.*, 640 F. Supp. 175, 178 (S.D.N.Y. 1986); *see Sierra Rutile Ltd. v. Katz,* 937 F.2d 743, 750 (2d Cir. 1991) ("It is appropriate, as an exercise of the district court's inherent powers, to grant a stay where the pending arbitration is an arbitration in which issues involved in the case may be determined.").

Based on Plaintiffs' opposition, Plaintiffs agree that a stay is appropriate. In their opposition, they argued that "[c]ompelling [a]rbitration with one defendant while a matter is pending with the other would unfairly prejudice the Plaintiffs" because it would force Plaintiffs "to pursue two separate avenues on the same set of circumstances." (Pls.' Opp'n p. 16.) As the entire matter is stayed pending the results of arbitration between Plaintiffs and Defendant Morgan Stanley, Plaintiffs will not be obligated to pursue two separate methods of relief from similar claims arising out of the same set of circumstances.

## CONCLUSION

For the foregoing reasons, Defendant Morgan Stanley's motion to compel arbitration and stay this proceeding is GRANTED. Defendant Pension Associate's motion to dismiss is DENIED without prejudice to renew once the stay in this matter is lifted. The Clerk of the Court is directed to stay this case. Plaintiffs and Defendant Morgan Stanley are directed to promptly pursue arbitration and to notify the Court and Defendant Pension Associates when the arbitration is concluded. The Court is directed to terminate the motions at ECF Nos. 15, 20, and 21.

Dated: June 13, 2019
        White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge